THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD WILLIAMS, Defendant-Appellant.

First District (3rd Division)    No. 60789

Opinion filed March 18, 1976.

---

Paul Bradley and Eva Weisner, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Ronald Williams, was tried and convicted by a jury for the offenses of murder and attempt armed robbery. The trial court entered judgment on this verdict and sentenced defendant to 20 to 60 years for the murder conviction and to 3 to 9 years for the attempt armed robbery conviction. The sentences were to be served concurrently.

Defendant now appels and makes the following contentions: (1) that the trial court erred in denying defendant's motion to discharge and in allowing the State to bring the defendant to trial 200 days after his initial incarceration; (2) that the trial court erred in denying the defendant's motion to suppress the confession because the State failed to sustain its burden of proving that the defendant made a knowing and intelligent waiver of his constitutional rights and that his confession was voluntary; (3) that the trial court erred in denying the defendant's motion to suppress the confession because there was no unequivocal and explicit finding of voluntariness as required by the Fourteenth Amendment; (4) that the trial court erred in giving the State's jury instruction regarding the voluntariness of the confession over defendant's objection because the statement was obtained in violation of defendant's constitutional rights; (5) that the warrantless arrest, search for and seizure of evidence was neither based upon probable cause nor justified by exigent circumstances and that the use of said evidence against the defendant at trial deprived the defendant of his Fourth Amendment right to be free from unreasonable searches and seizures and his Fourteenth Amendment right to due process of law; (6) that the cumulative effect of the prosecutor's remarks so prejudiced the jury against the defendant as to deny him his Sixth and Fourteenth Amendment rights.

We affirm.

Defendant was found guilty by a jury of the crimes of murder and

attempt armed robbery. Evidence produced at trial indicated that Allen Tatum had been shot to death in his apartment at 1627 West Washington in Chicago in the early morning hours of May 21, 1973. Two witnesses testified that around the time of the murder they heard three shots coming from the vicinity of Tatum's apartment and then saw several men run from that area and into a cab stand located at Ashland and Ogden Streets. One of the employees at the cab stand stated that between 2 and 3 a.m. the morning of the murder he saw two men run into the cab stand. This employee testified that he had seen these two men before and identified one of the men in court as defendant Ronald Williams.

Offered into evidence at trial was a Titan .25-caliber automatic pistol which was found cocked and loaded in the waistband of defendant's trousers when he was arrested. Ballistics tests indicated that this pistol fired the three bullets which killed Allen Tatum.

Also offered into evidence at trial was a written and signed statement the defendant gave the day of his arrest. In this statement defendant stated that shortly before the homicide he was in a bar near the area of the homicide. There defendant met several other individuals and together they subsequently decided to rob Allen Tatum. Arriving at Tatum's residence, defendant and his companions announced to Tatum that they were going to rob him. Defendant placed a gun to Tatum's head at which time one of defendant's companions grabbed defendant's hand and caused the gun to fire several times. Defendant and several of his companions then ran to the taxi stand at Ashland and Ogden Streets.

At trial, the defense called no witnesses and produced no evidence.

Defendant first argues that the trial court erred in denying his motion for discharge and in allowing the State to bring the defendant to trial 200 days after defendant's initial incarceration. The record in the instant case establishes that defendant was arrested and charged with the crimes of murder and attempt armed robbery on May 26, 1973, that he was indicted for the above crimes on August 12, 1973, and arraigned on August 29, 1973. At defendant's arraignment a public defender was appointed to represent defendant and the case was assigned to Judge Bailey.

Defendant appeared before Judge Bailey on August 29, 1973, and requested to go to trial immediately. The assistant public defender who was appointed that same day stated to the court that he had talked briefly with the defendant and advised him that in view of the nature of the charges a continuance should be requested in order that the public defender could file motions for discovery and familiarize himself with the case. The court, on its own motion, continued the case until the following day so that counsel might confer with his client.

When the case was called the following day, the prosecution announced ready for trial. The public defender again expressed his desire

that the case be continued rather than tried that day. The defendant, however, persisted in his demand for trial. After informing the defendant of the inadvisability of going to trial immediately, the court granted defense counsel's motion for a continuance and continued the case until September 25, 1973. After the hearing on August 30, the defense filed a motion for discovery and at the hearing on September 25 the prosecution announced that it had complied with this motion for discovery. At the hearing on September 25, defendant again stated that he was ready for trial, but at the request of defendant's attorney the case was continued to October 18. On October 18, 1973, defense counsel was still not prepared for trial and the case was continued to October 26, 1973. On November 2, 1973, defendant filed a motion for discharge based on section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 103—5). The trial court ordered that this motion be denied. After a hearing on defense motions to quash the arrest and suppress statements, trial commenced on December 17, 1973.

Section 103—5(a) of the Code of Criminal Procedure reads, in pertinent part, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *." The uncontroverted facts in the instant case indicate that defendant was not tried within 120 days of his initial incarceration on May 26 and that defendant continually requested to go to trial immediately. However, it is also uncontroverted that the State, within 120 days of defendant's initial incarceration, answered ready for trial and that the continuances that extended the initiation of the trial beyond the 120-day period were requested by defendant's counsel so he could properly prepare a defense.

■■ A situation similar to that in the instant case arose in *People v. Carr* (1972), 9 Ill. App. 3d 382, 292 N.E.2d 492. In *Carr*, the public defender, in order to properly prepare a defense for his client, requested a continuance which delayed the initiation of the trial beyond 120 days of defendant's initial incarceration. Over defendant's strenuous objection, the trial court granted defendant's counsel's motion for a continuance. Noting that defendant never discharged his counsel and that if the trial court had acceded to defendant's demands the question would surely have arisen as to whether defendant had been denied effective assistance of counsel, the court on appeal in *Carr* ruled that the four-term act was not violated and that the trial court took proper action in granting the continuance. Similarly, in the instant case defendant never discharged his counsel and the trial court granted defendant's counsel's motions for continuances so that a proper defense could be prepared. In so doing the trial court did not err.

Defendant also cites *Faretta v. California* (1975), 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525, a case in which the United States Supreme

Court ruled that a defendant in a State criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. Defendant argues that the trial court's granting of defendant's counsel's motion for a continuance and failure to accede to defendant's request to be tried immediately was in derogation of defendant's right to proceed without counsel. This contention has already been rejected by this court in *People v. Ford* (1975), 34 Ill. App. 3d 79, 339 N.E.2d 293. Furthermore, defendant in the instant case made no attempt to discharge his counsel or request to defend himself. Under such circumstances, the trial court's granting of defense counsel's request for a continuance to properly prepare a defense was in no way in derogation of defendant's right to proceed without counsel.

Defendant next argues that the trial court erred in denying his motion to suppress the confession because the State failed to sustain its burden of proving that his confession was voluntary and that defendant made a knowing and intelligent waiver of his constitutional rights. We disagree.

At the hearing on the motion to suppress the confession, the following witnesses testified: the two arresting police officers, Officers Foster and Acosta, an assistant State's Attorney, Neal Walter, and defendant himself. Officer Acosta testified that after placing defendant under arrest, his partner, Officer Foster, advised defendant that he had a right to remain silent, that anything defendant said could be used against him, that defendant had a right to an attorney, and that if he could not afford an attorney one would be appointed for him. After defendant acknowledged that he understood his rights, the officers took defendant to Area 4 Homicide Headquarters where defendant was placed in an interview room where his hand was handcuffed to a ring on the wall. There defendant's rights were again read to him.

In the interview room defendant agreed to answer questions and Officers Acosta and Foster told defendant they believed he was involved in the homicide of Allen Tatum. Without any force having been exerted on defendant, defendant made a statement after which he was allowed to make a telephone call. The assistant State's Attorney, Neal Walter, and a court reporter were then called and upon their arrival, defendant's statement was reduced to writing.

On cross-examination, Officer Acosta testified that defendant's rights were recited to him for the first time after the pistol was found on defendant's person while in the apartment of Isom Ridgeway (the man in whose apartment defendant was staying at the time of his arrest).

The assistant State's Attorney, Mr. Walter, testified at the hearing on the motion to suppress the confession, that upon seeing the defendant seated in the interview room he advised defendant of his rights and ascertained that defendant understood those rights. Mr. Walter then had a conversa-

tion with defendant concerning the homicide of Allen Tatum. The statement defendant gave to Mr. Walter was then taken down by a court reporter. Prior to the written statement defendant's rights were again read to him. Mr. Walter further stated that during this period no physical threats or use of force were engaged in by him or in his presence. Mr. Walter also testified that he saw no bruises on defendant's person and that he was informed by defendant that defendant had not been physically abused.

The third witness at the hearing on the motion to suppress the confession, Officer Foster, testified that at approximately 12:15 a.m. defendant was placed under arrest. He was then handcuffed, given his Miranda warnings and taken to Area 4 Homicide. There he was placed in an interview room where he was asked to relate to Officers Acosta and Foster what occurred on May 21, 1973. Defendant was then informed of his constitutional rights which defendant acknowledged he understood. After defendant recounted what happened on May 21, he asked to make a telephone call and was allowed to make the call. At approximately 12:45 a.m. the assistant State's Attorney, Neal Walter, was called. He arrived shortly thereafter and read defendant his rights. No physical or psychological coercion was used.

Defendant testified at the above hearing that he was taken to the Maxwell Street Station by Officers Acosta and Foster. At 10:30 or 11 p.m. defendant was taken to a room in the station and handcuffed to the wall. After leaving defendant alone in the room, Officer Acosta returned and told defendant: "Tell us what happened or I am going to break both your damned legs." Officer Acosta then struck defendant in the head and told him to confess. Defendant then requested to make a telephone call but was not allowed to do so. After Officer Acosta had threatened and insulted defendant for about 15 minutes, Officer Foster came in and told defendant he could make a telephone call if he told them what happened. For 45 minutes to an hour Officer Acosta questioned the defendant and during the course of this questioning defendant told the officers that he was present when Allen Tatum was killed. At the time he made this admission neither of the officers struck him. An assistant State's Attorney named Mr. Walter then entered and defendant told Mr. Walter he wanted to make a phone call and that the officers were trying to force him to make a confession. The assistant State's Attorney then left and Officer Acosta returned and hit and kicked defendant because of what he had told the assistant State's Attorney. Fifteen minutes later defendant answered questions in front of a court reporter and signed a written statement. The statement partially contained an admission about defendant's being involved in the homicide of Allen Tatum. Defendant stated he did not use his usual signature in signing the statement, but instead used "Ron-

nie Williams" because he thought the statement would be void if he did not use his real signature. Defendant further stated that he told the assistant State's Attorney and the police officers that on the day prior to his arrest he had taken a drug called Ritalin.

On cross-examination defendant stated that he told Officer Acosta that he had no part in the killing and that Officer Acosta told him he was lying. Officer Acosta hit defendant in the head two or three times with a partially closed fist and kicked him between the legs while he was handcuffed and seated in a chair. Defendant did not bleed or yell as a result of this beating but suffered soreness and perhaps a little swelling. Officer Acosta then left and Officer Foster entered. Officer Foster would not permit defendant to make a telephone call until he made a statement. Defendant told Officer Foster that he did not want to make a statement but answered Officer Foster's questions.

After the above testimony, the trial court stated that he found defendant's testimony "preposterous and completely unbelievable" and that "the testimony, especially of the state's attorney [told] a common sense story, supported by an affidavit [and] taken down by the court reporter." The trial court then denied the motion to suppress the confession.

The question of whether or not defendant's statement was voluntary must be determined from the totality of the circumstances surrounding the confession. (*People v. Bey* (1970), 45 Ill.2d 535, 259 N.E.2d 800.) Defendant argues that viewing his statement in light of the totality of the surrounding circumstances, the confession cannot withstand the requisite test of voluntariness and its introduction into evidence was a violation of defendant's constitutional rights.

■■ While it is true that defendant was handcuffed to the wall in the interview room, that defendant made no telephone call until after signing his statement, and that neither friend, counsel, nor relative was present during the interrogation, the record adequately supports the finding that the confession was voluntary.

The preliminary inquiry into the voluntariness of a confession is for the trial court and its finding will not be disturbed unless it is against the manifest weight of the evidence. (*People v. Higgins* (1972), 50 Ill.2d 221, 278 N.E.2d 68.) Reviewing the totality of circumstances surrounding the confession, we find no atmosphere so coercive as to deprive defendant of his ability to make a free and voluntary confession and do not find the trial court's ruling that the confession was voluntary to be against the manifest weight of the evidence. Defendant testified that he was beaten but admitted that this alleged beating left no visible marks on the body and that he did not bleed or scream as he was being beaten. Defendant testified that he told the assistant State's Attorney that he had been beaten, but this was contradicted by the assistant State's Attorney who in fact stated that de-

fendant told him that he had not been physically abused. The testimony of Officers Acosta and Foster establishes that they advised defendant of his rights and ascertained that defendant understood those rights before beginning interrogation of defendant. While defendant did not make a telephone call until after he made his statement, the testimony of Officer Foster indicates that he did not ask to make a telephone call until after he gave this statement.

■■ Furthermore, defendant's statement that he had taken the drug Ritalin and was still feeling the effects of such drug at the time he gave his confession is contradicted by a statement in the confession in which defendant indicates that he was not under the influence of any drugs. Even assuming that defendant had taken such a drug, his written statement is clear and lucid and there is no indication in the record that defendant's statement was influenced by the use of drugs. Under such circumstances the ingestion of drugs will not render defendant's statement involuntary. See *People v. Pote* (1972), 5 Ill. App. 3d 856, 284 N.E.2d 366.

■■ It is true that defendant was never represented by counsel before he gave his confession. However, both officers testified that defendant was informed of his right to counsel before his interrogation and that defendant stated that he understood that right. Nowhere does the record suggest that defendant requested or desired counsel. Defendant did make a phone call after confessing but did not testify as to whom he called. It is true that no statement elicited in derogation of defendant's right to counsel may be used against him. (*Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758.) However, defendant must show that a request for counsel was made by him or in his behalf. (See *People v. Hartgraves* (1964), 31 Ill. 2d 375, 202 N.E.2d 33; *People v. Evans* (1967), 85 Ill. App. 2d 290, 230 N.E.2d 20.) In the instant case there is no indication that before giving his statement defendant ever requested the right to counsel.

Defendant further argues that the trial court erred in denying his motion to suppress the confession because there was no explicit finding of voluntariness as required by the Fourteenth Amendment. (*Jackson v. Denno* (1964), 378 U.S. 368, 12 L.Ed. 2d 908, 84 S.Ct. 1774.) Relying on *People v. Evans* (1967), 85 Ill. App. 2d 290, 230 N.E. 2d 20, defendant also argues that the failure of the trial court to make a finding as to whether or not a request for counsel was made and refused entitles defendant at the very least to a remand for an evidentiary hearing on his motion to suppress the confession.

■■ It is our decision that the record clearly shows that the trial court in denying the motion to suppress made an explicit finding that defendant's confession was voluntary. In denying the motion to suppress the confession, the trial court stated that he found defendant's story "prepos-

terous and completely unbelievable," and that the testimony especially of the assistant State's Attorney told a common sense story which was supported by affidavit and taken down by the court reporter. Furthermore, defendant's motion to suppress alleged that the confession was not voluntary and the greater part of the testimony at the hearing on the above motion related to whether or not the confession was voluntary. Under these circumstances the above statement of the trial court in denying the motion to suppress indicates with unmistakable clarity the trial court's conclusion that the confession was voluntary.

We furthermore find no merit to defendant's contention that under *People v. Evans* the trial court's failure to make a finding as to whether or not a request for counsel was made and refused entitles defendant to at least a remand. Nowhere in the testimony adduced at the hearing on the motion to suppress the confession is there any indication that defendant requested counsel. Defendant did testify that he requested and was denied an opportunity to make a phone call before giving any statement. The two police officers testified that defendant did indeed request to make a telephone call, but further testimony from Officer Foster indicated that his request came after defendant made his statement. Defendant made the above telephone call, but nowhere does the record reflect to whom he spoke.

The situation in the instant case is distinguishable from that in *Evans*. The trial court in *Evans* made no finding as to whether defendant requested counsel and the court on appeal stated that the trial court should have first determined whether defendant asked for counsel at the time of or before interrogation and should then have determined the issue of voluntariness of the confession. This court then remanded with directions to conduct a new preliminary hearing on the motion to suppress the confession. However, the court in *Evans* further stated that defendant must show that a request for counsel was made by him or in his behalf. In the instant case nowhere does the record reflect that defendant ever requested counsel and consequently the trial court did not need to make a finding on that issue.

■■ Defendant next contends that the court erred in giving the State's instruction concerning the voluntariness of the confession because the statement was obtained in violation of his constitutional rights. The above instruction, IPI Criminal No. 3.07, reads as follows:

"You have before you the evidence that the defendant confessed that he committed the crime charged in the indictment. It is for you to determine whether the defendant confessed, and if so, what weight should be given to the confession. In determining the weight to be given to a confession, you should consider all of the circumstances under which it was made."

For reasons already stated, we find that the statement which defendant gave the police was not obtained in violation of any of his constitutional rights. Defendant, however, further argues that the above statement used the term "confessed" or "confession" so many times that it merely served to buttress the strength of the statement itself. We find this contention to be without merit. The above instruction properly states that if a trial judge receives a confession into evidence, the jury is to consider the confession and give it such weight as the jury determines it deserves. (*People v. De Simone* (1963), 27 Ill.2d 406, 189 N.E.2d 329.) Furthermore, defendant's statement was a confession. A confession must admit all necessary elements of a crime. (*People v. Ward* (1968), 103 Ill. App. 2d 402, 243 N.E.2d 54; *People v. Rollins* (1970), 119 Ill. App. 2d 116, 255 N.E.2d 471.) Defendant's statement indicated that he participated in a forcible felony which resulted in the death of a victim. For the foregoing reason the trial court properly tendered the above instruction.

■■ Defendant next cites certain comments of the prosecution made during closing argument and argues that the cumulative effect of these remarks so prejudiced the jury that defendant was denied a fair trial. We first note that we find none of these statements to be plain error under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)) and that as to certain of these statements defendant raised no objection at trial. It is the well-established rule that as to these statements the failure to object waives any error therein for purposes of appeal. *People v. Kurzydlo* (1974), 23 Ill. App. 3d 791, 320 N.E.2d 80.

Furthermore, defendant in the instant case does not argue that there is a reasonable doubt as to his guilt and, indeed, a review of the record in the instant case leads to the conclusion that the verdict returned was the only reasonable one which could have been reached on the basis of the evidence presented. Under such circumstances, the verdict of guilty could not have been influenced by any allegedly prejudicial comments (*People v. Davis* (1970), 46 Ill.2d 554, 264 N.E.2d 140; *People v. Kurzydlo* (1974), 23 Ill. App. 3d 791, 320 N.E.2d 80), and such comments in no way denied defendant a fair trial.

■■■ Defendant next contends that the warrantless arrest, search for, and seizure of evidence was not based on probable cause or justified by exigent circumstances and the use of such evidence deprived defendant of his Fourth and Fourteenth Amendment rights. Defendant filed a motion to quash the arrest and suppress evidence and on December 13, 1973, a hearing was had on this motion. At this hearing defendant testified that he lived at 317 South Throop Street in Chicago and that on May 26, 1973, as he was coming down the steps of the building in which he lived, he was stopped by Officers Acosta and Foster. Defendant further testified that he was immediately arrested, thrown atop a parked car, searched, hand-

cuffed, and subsequently taken up to room 351 of the hotel. Defendant further testified that the officers searched room 351 and uncovered nothing. The officers then searched Williams' person again and uncovered the pistol sought to be suppressed.

Isom Ridgeway, an occupant of room 351, testified at the above hearing that he was uncertain as to whether or not he gave the officers permission to search the room but concluded that he believed he did not give such permission. Ridgeway further testified that after finding the gun on Williams, one of the officers struck Williams saying, "Why did you lie to me, you cock-sucker, you."

Officer Acosta testified that during the course of his investigation two witnesses informed him that at the approximate time of the homicide they saw four men run from the vicinity of the shooting and that two of these men ran into a cab stand. An employee of the cab stand informed Officer Acosta that at the approximate time of the homicide two men entered the cab stand. This employee later identified Ronald Williams from a photograph as one of these men. Officer Acosta further testified that when he and Officer Foster stopped defendant in front of 317 South Throop Street they were armed with the above photograph of defendant. At that time the officers informed Williams that he was a suspect in a homicide and frisked him for weapons. After Williams stated that he was staying with someone in room 351 of the building at 317 South Throop Street, the officers went with Williams up to room 351. There an occupant of the room, Isom Ridgeway, told them to go ahead and search the room. Lying on a table in the room in plain view was a brochure describing the use of a Titan pistol. Williams stated that the pistol was his but that he did not know where it was. Williams then stated he would show the officers where the gun was at which point Williams was frisked again and a cocked and loaded pistol was found in the waistband of his belt. After the pistol was found defendant was placed under arrest.

After hearing all of the above evidence, the trial court denied defendant's motion to quash the arrest and suppress the pistol as evidence.

It is our decision that the trial court did not err in denying the above motion. Based upon the information that the officers had previously gathered and the fact that they were armed with a photograph of defendant, the officers were entitled to stop the defendant for questioning and to frisk him for their own protection. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868; *People v. Lee* (1971), 48 Ill.2d 272, 269 N.E.2d 488; Ill. Rev. Stat. 1973, ch. 38, pars. 107—14 and 108—1.01.) Subsequently given permission to enter and search room 351 where defendant was residing, the officers discovered in plain view a brochure relating to the use of a Titan automatic pistol and further heard defendant say that the pistol was his. This information gave the officers the right to again search

the defendant for their own protection. (*Terry v. Ohio.*) Upon discovering a cocked and loaded weapon on defendant's person, the officers had probable cause to arrest defendant. Consequently, the trial court did not err in denying defendant's motion to quash the arrest and suppress evidence.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MEJDA, P. J., and McNAMARA, J., concur.