THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MYRON L. BARBER, Defendant-Appellant.
Fourth District   No. 4—88—0518

Opinion filed April 28, 1989.—Rehearing denied May 23, 1989.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

After a bench trial, defendant was convicted of unlawful use of weapons by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1(a)) and, subsequently, was sentenced to three years' imprisonment (Ill. Rev. Stat. 1987, ch. 38, pars. 24—1.1(d), 1005—8—1(a)(6)). Defendant appeals arguing the trial court erred in denying his motion to suppress.

We affirm.

The motion alleged the police without probable cause or consent searched defendant's clothing and as a result arrested him. On January 11, 1988, police officers were dispatched to a residence in Springfield. Several persons had called the police reporting people on the porch had been firing a weapon and had reentered the house. At the suppression hearing, defendant testified that he had been visiting the house on January 11, 1988. The house belonged to Karen Eubanks. The police arrived at about 4:05 p.m., talked to Eubanks, then searched defendant. Prior to the search, he was sitting at a coffee table in the living room eating chicken. The police did not have a warrant for his arrest; however, after discovering an ammunition clip loaded with .45 caliber ammunition in his pocket, the police arrested him.

On cross-examination, defendant stated he was standing by the door when the police arrived. He listened to the police questioning Eubanks. He sat down when police officers walked in. Eubanks did not give police permission to search the house. As a police officer started to talk to him, he stood up. The ammunition clip was two inches wide and four inches long.

Springfield police officer Randy Wilson stated that he knocked on the front door and received permission to enter. He saw defendant seated at the dining room table, eating chicken. He also saw David Williams and Bessie Davis. All denied any knowledge of shots being fired from the residence. Defendant stated his name was Calvin Gino.

Officer Edward Flesch, who was on the front porch, told the officers inside the house that he had found two .45 caliber shell casings on the porch. During questioning, defendant stood up and started to walk away from Wilson, who noticed a bulge in defendant's right rear pocket. Wilson was concerned about his safety and decided to search defendant.

Wilson stated no one was arrested prior to the search, he did not have a warrant for defendant's arrest, did not know the shell casings came from defendant personally, and suspected the presence of a weapon in the house but had no actual knowledge that one was there. He learned after the search that defendant had given him a false name. Wilson admitted his police report did not mention the bulge in defendant's pocket.

Other police officers, who were present, corroborated Wilson's testimony. The trial court denied the motion to suppress the ammunition clip.

The police officers' trial testimonies were consistent with their testimonies at the suppression hearing. Additionally, Wilson testified defendant stated Eubanks fired a .45 caliber automatic at a tire on the Williams vehicle. Defendant denied firing the weapon. Defendant had placed the ammunition clip in his pocket after he had found it in Eubanks' vehicle.

The State introduced a certified copy of defendant's prior felony conviction.

Defendant argues his constitutional rights were violated when Officer Wilson conducted a search for weapons absent a warrant, consent, or probable cause to believe defendant was involved in the commission of an offense. Defendant contends *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, is inapplicable in the instant situation. Defendant maintains protective searches may only occur in public places and not in private residences. Secondly, defendant argues no probable cause existed to arrest him prior to the search.

■ A trial court's determination on a motion to suppress will only be overturned where it is contrary to the manifest weight of the evidence. (*People v. Galvin* (1989), 127 Ill. 2d 153.) Although the factual situation in *Terry* involved a protective search in a public setting, the limited question before the court was whether it was always unreasonable for police officers to seize a person and subject him to a limited search for weapons absent probable cause to arrest. (*Terry*, 392 U.S. at 15, 20 L. Ed. 2d at 902-03, 88 S. Ct. at 1877.) The *Terry* Court noted the great need for law enforcement officers to protect themselves from violence in situations where they lacked probable

cause for an arrest. The Court also noted that the fourth amendment protected persons and a balance needed to be reached between the need to protect the officer in an investigatory setting and the need to protect the person's fourth amendment rights.

In its analysis, the Court determined the circumstances under which the fourth amendment would permit the stopping for investigatory purposes of a person. The Court then determined when a permissible protective search could occur once the officer was investigating suspicious circumstances. The Court concluded that when a reasonably prudent man in the circumstances presented to the officer would believe his safety or the safety of others was in danger, a limited protective search for weapons was permissible. The Court stressed that an articulable set of reasons for the belief must exist. The officer could not justify the search based upon a hunch. The Court stated:

> "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884-85.

See also *Galvin*, 127 Ill. 2d 153.

■ We find the location of the protective search is not the controlling factor in determining its constitutional validity. In *People v. Williams* (1976), 37 Ill. App. 3d 151, 345 N.E.2d 705, the court denied defendant's motion to suppress a weapon. Two witnesses had identified defendant as being a person seen in the vicinity of a shooting. Police officers stopped defendant, frisked him for weapons, and talked to him. Subsequently, the officers went with defendant to his room. Defendant's roommate gave the police permission to search the room. After the officers discovered literature on a pistol, defendant indicated it belonged to him. The officers then frisked defendant and they discovered a loaded weapon. The court held that after police officers discovered the literature and heard the defendant say the weapon was his, *Terry* authorized an additional search of the defendant.

■ Similarly, the circumstances here could lead the officers to reasonably conclude they were in danger. The officers were called to the residence to investigate gunshots; they received permission to enter the house; shells were discovered on the front porch of the house; the officers knew persons involved in shooting the weapon had reentered the house; after the officers were invited into the home, they discovered four persons present who denied any knowledge of the shooting; and defendant, who started to walk away from the officer during questioning, had a suspicious bulge in his pocket. The factors present here were sufficient to authorize the limited search which occurred. The trial court did not err in denying the motion to suppress. *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Williams*, 37 Ill. App. 3d 151, 345 N.E.2d 705; see also *United States v. Mack* (W.D. Penn. 1976), 421 F. Supp. 561, *aff'd* (1978), 568 F.2d 771.

For the above reasons, we affirm the trial court.

Affirmed.

LUND and GREEN, JJ., concur.