THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH HOLLIDAY *et al.*, Defendants-Appellants.

Fifth District   No. 81—350

Opinion filed April 26, 1983.

Randy E. Blue and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

William P. Strange, Special Prosecutor, of Lawrenceville (Stephen E. Norris and Karen L. Stallman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

In separate proceedings in the circuit court of Crawford County, defendant William Walton was convicted of theft of a firearm and theft of property valued in excess of $150, and defendant Kenneth Holliday was convicted of theft of property valued in excess of $150. They have appealed from their convictions, and their appeals have been consolidated in this court. They present one assignment of error common to both convictions, that the trial court erred in denying their motions to suppress evidence seized during a search of their residence. Defendant Holliday argues that he was denied the effective assistance of counsel because his attorney failed to move for his discharge on speedy-trial grounds. Defendant Walton contends that his conviction of theft of a firearm should be reversed, it being based upon the same act which supported his conviction for theft of property valued in excess of $150.

Both defendants challenge the court's denial of their motions to suppress items seized from their residence on April 6, 1980. A search of that residence was undertaken pursuant to a consent signed by defendant Walton at the Crawford County jail and pursuant to a search warrant issued that day. The defendants insist that the complaint for the search warrant did not state probable cause for the search, that, even if the warrant were properly issued, the search exceeded the scope of the warrant, and that Walton's consent to search was not voluntarily given. Because we agree with the trial court's finding that Walton voluntarily consented to the search, we need not consider the arguments pertaining to the search warrant.

At the suppression hearing, Robinson police officer William Millsap and both defendants testified. Of these three witnesses, only Millsap and defendant Walton gave testimony relevant to the issue of the voluntary nature of Walton's consent. On the evening of April 5, 1980, the Robinson police department received a complaint that Walton had been seen brandishing a weapon at a party. Officer Millsap recalled that when he attempted to locate Walton, he went to the residence of Holliday and Walton, where he discovered items which he believed had been stolen in a recent burglary. Later that evening, Walton was arrested and charged with reckless conduct, based on the incident at the party, and was incarcerated in the Crawford County jail.

The following morning, Millsap read Walton *Miranda* warnings, which, he remembered, Walton seemed to understand. He then requested Walton to sign a form in which he would consent to the search of his residence, informing him that he had the right to with-

hold his consent. Walton did not deny that he had been so advised, but asserted that he signed the consent because he had been told that "the judge was on the way down" to the jail and "they were getting a warrant out, anyway." Millsap stated that he did not tell Walton before the consent was signed that a judge was on his way to the jail, because no judge had been contacted at that time. However, Millsap did admit that he told Walton that he and other law enforcement officials were attempting to locate a judge to sign a warrant. A judge of the Second Judicial Circuit did arrive at the jail approximately 30 to 45 minutes after Walton signed the consent form, and that judge, acting on a complaint by Millsap, issued a warrant to search the Holliday and Walton residence.

In order to support a search undertaken pursuant to consent, the State must prove by a preponderance of the evidence that that consent was voluntarily given. (*People v. Posey* (1981), 99 Ill. App. 3d 943, 426 N.E.2d 209, *cert. denied* (1982), 456 U.S. 993, 73 L. Ed. 2d 1289, 102 S. Ct. 2276.) The voluntary character of the consent presents a question of fact to be resolved from consideration of all the circumstances under which the consent was given. (*Schneckloth v. Bustamonte* (1983), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. Meddows* (1981), 100 Ill. App. 3d 576, 427 N.E.2d 219, *cert. denied* (1982), 459 U.S. 855, 74 L. Ed. 2d 107, 103 S. Ct. 123.) A trial court's determination on the voluntariness of a consent to search will be accepted on review unless plainly unreasonable. *People v. Wahlen* (1982), 111 Ill. App. 3d 194, 443 N.E.2d 728; *People v. Dortch* (1978), 64 Ill. App. 3d 894, 381 N.E.2d 1193.

As the People correctly argue, the fact that a consenting party is in custody does not, by itself, establish that the consent was coerced. (*United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820; *People v. Zynda* (1977), 53 Ill. App. 3d 794, 368 N.E.2d 1079; *People v. Pagliara* (1977), 47 Ill. App. 3d 708, 365 N.E.2d 72, *cert. denied* (1978), 434 U.S. 1069, 55 L. Ed. 2d 772, 98 S. Ct. 1250.) In the case at bar, Walton was given *Miranda* warnings and was specifically informed that he need not consent to the search. While failure to give the latter admonishment does not render a consent involuntary (*Schneckloth v. Bustamonte; People v. Billings* (1977), 52 Ill. App. 3d 414, 367 N.E.2d 337), the fact that a consenting party has been so advised is further evidence that the consent was not coerced. *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608; *People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 1d 1371, 102 S. Ct. 3490.

■ Both defendants do not disagree with these principles, but argue that the evidence introduced at the suppression hearing shows only that Walton's signing of the consent form constituted mere acquiescence, submission or resignation to asserted police authority, and was thus involuntary. (*Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788; *People v. Johnson* (1981), 99 Ill. App. 3d 863, 425 N.E.2d 1215; *People v. Kelly* (1979), 76 Ill. App. 3d 80, 394 N.E.2d 739.) In *Bumper v. North Carolina*, Justice Stewart commented, "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion." (391 U.S. 543, 550, 20 L. Ed. 2d 797, 803, 88 S. Ct. 1788, 1792.) Holliday and Walton contend that a similar sort of coercion was present when Walton consented to the search of the residence in this case.

In *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33, and *People v. Griffin* (1977), 53 Ill. App. 3d 294, 368 N.E.2d 738, the consenting parties were informed, prior to giving their consent to search, that if they did not consent, the police would obtain a search warrant. Instead of holding that this information conveyed to the consenting parties the impression that they could not withhold their consent, both courts reasoned that the possible availability of a search warrant suggested to the parties that they need not consent to the search. Here, although Millsap and Walton disagreed on whether Walton was told that a judge was being located or that a judge was on his way to the jail, it is not contested that Walton was informed only that the police would seek a search warrant, not that they had one already. This circumstance, when viewed with the conditions under which Walton executed the consent to search form, shows that the trial court's finding that that consent was voluntarily given was not plainly erroneous. The search of the Holliday and Walton residence was therefore properly upheld as a product of that consent. See also *United States ex rel. Gockley v. Myers* (3d Cir. 1967), 378 F.2d 398; *Resendez v. State* (Tex. Crim. App. 1975), 523 S.W.2d 700.

■ Next, defendant Holliday maintains that he was denied the effective assistance of counsel when his attorney failed to move for discharge under the speedy trial act (Ill. Rev. Stat. 1981, ch. 38, par. 103—5), even though Holliday was not brought to trial until 438 days after a demand for a speedy trial was made. To resolve this issue, a chronology of Holliday's trial proceedings is necessary. Holliday was arrested on April 8, 1980, and filed a demand for a speedy trial on April 11. Also on April 11, he filed a motion for a list of State's wit-

nesses, a motion to produce evidence, and a motion for a change of venue from Crawford County. He filed a motion for reduction of bail on April 22, which motion was granted following a hearing on April 23.

A preliminary hearing was held on April 25, at which the court noted that the only remaining motion was Holliday's motion for change of venue. The court set that motion for hearing on April 28; however, it was not heard at that time. Defense counsel appeared in court on April 28 and orally moved to amend the motion for a change of venue, which was allowed. He also requested leave to file additional motions, to be heard before the venue motion, and, on April 30, he filed motions to suppress evidence and to quash the search warrant. According to a docket entry dated April 28, all pending motions were to be heard on May 2, 1980.

On May 1, defense counsel requested that all motions be continued, and this request was granted. A docket entry of August 11, 1980, indicates that Holliday's case was set for a jury trial on September 11, but instead, the suppression motions and motions to quash the search warrant, filed by Holliday and Walton, were heard jointly and denied on September 15.

During the course of these proceedings, Holliday's appointed counsel, Jon Anderson, was elected State's Attorney of Crawford County. Consequently, on January 9, 1981, he was replaced by William K. Thomas as defense counsel, and, on January 22, 1981, William Strange of Lawrenceville was appointed special prosecutor.

On May 18, 1981, Holliday's case was set for hearing on May 28, but, on the latter date, it was reset for June 3, 1981. No docket entry appears for June 3. Holliday's stipulated bench trial was held on June 24, 1981.

Defendant Holliday asserts that his trial counsel should have moved for his discharge on speedy trial grounds, because even assuming that the 157 days which elapsed between his speedy trial demand and the September 15 suppression hearing are attributable to him, the following 281 days until the stipulated bench trial cannot be so attributed. The People respond that the 160-day period was tolled by the filing of the motion for a change of venue, which was amended once and was continued at least twice at the request of defense counsel. Defendant Holliday replies that a delay due to a defense motion is attributable to the defendant only if a delay actually occurs (*People v. Ferguson* (1977), 46 Ill. App. 3d 815, 361 N.E.2d 339), and in this case, no delay was occasioned by the venue motion because the defense never called it up for hearing. Under these circumstances, he

maintains, he abandoned that motion and his discharge should have been requested. We cannot agree.

Defendant Holliday's motion for a change of venue would have required a hearing, had it been requested (Ill. Rev. Stat. 1981, ch. 38, par. 114—6(b)), and thus would have necessitated some preparation time by the State. (Compare *People v. Donaldson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776.) Had the motion been heard and decided, the resulting delay to hold the hearing would certainly have been attributable to defendant Holliday. (See *People v. Ortiz* (1979), 70 Ill. App. 3d 684, 388 N.E.2d 891; *People v. Ellis* (1972), 4 Ill. App. 3d 585, 281 N.E.2d 405.) The question presented here, however, is whether such a motion can be deemed to have caused delay when it was neither called for hearing by the defense nor withdrawn.

In *People v. Ross* (1971), 132 Ill. App. 2d 1095, 271 N.E.2d 100, the defendant filed a motion for discovery and a motion to suppress, both of which would have required a hearing. He did not request that either motion be set for a hearing, and, six months later, moved for discharge on speedy-trial grounds. Holding that the trial court erred in discharging the defendant, the appellate court stated that the defendant knew by the type of motions he filed, that legal and factual questions were presented that would have necessitated delay. Of the defendant's failure to call the motions for hearing, the court said, "He planted the seed and then retired to the shade with a hoe over his shoulder and permitted the weeds to grow in the garden. His quiescence amounted to an acquiescence to a delay in having this case in readiness for trial." 132 Ill. App. 2d 1095, 1096, 271 N.E.2d 100, 101.

Here, too, defendant Holliday's pending motion dictated an extensive inquiry, specifically, into the allegations that the citizens of Crawford County would be unable to give defendant Holliday a fair trial. By not taking action on the motion or withdrawing it, Holliday did nothing to alert the State that his prosecution should be expedited so as to avoid a speedy trial violation. In fact, defense counsel's oral amendment of the venue motion and requested continuances on April 28 and May 1, 1980, would have led the State to believe that he was still pursuing the change of venue. In the absence of withdrawal of that motion, we agree with the People that any delay occurring until the case was set for hearing on May 28, 1981, presumably on that motion, being the only pending motion on file, is attributable to defendant Holliday. He was therefore brought to trial well within the 160-day statutory period. Since a motion for discharge should not have been granted, Holliday's trial counsel was not ineffective for having

failed to so move. *People v. Callahan* (1981), 95 Ill. App. 3d 479, 420 N.E.2d 787.

■ Finally, defendant Walton argues that his conviction for theft of a firearm should be reversed, it being based on the same physical act upon which his conviction of theft of property valued in excess of $150 was based. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) He points to *People v. Jackson* (1978), 64 Ill. App. 3d 159, 380 N.E.2d 1210, in which it was held that the simultaneous exertion of unauthorized control over several different items of property belonging to different owners could support only one conviction of theft. The court in *Jackson* relied upon *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, where simultaneous possession of two different types of controlled substances was held to support only one conviction of possession of controlled substances under section 402 of the Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1402). In proscribing possession of controlled substances, section 402 lists 11 substances and states that possession of those substances in excess of the amount specified in the subsection is a Class 1 felony. (Ill. Rev. Stat. 1981, ch. 56½, pars. 1402(a)(1) through 1402(a)(11).) Possession of any other amount of a controlled substance is a Class 4 felony. (Ill. Rev. Stat. 1981, ch. 56½, par. 1402(b).) In *Manning*, the defendant was convicted of possession of barbituric acid and amphetamine, which substances are listed in sections 402(a)(5) and 402(a)(6), respectively. Our supreme court held that "in the absence of a statutory provision to the contrary, the simultaneous possession of more than one type of controlled substance, under the circumstances shown on this record, constituted a single offense, and only one sentence should have been imposed." 71 Ill. 2d 132, 137, 374 N.E.2d 200, 202.

The offenses of theft of a firearm and theft of property valued in excess of $150 are, of course, both types of theft. The elements of theft are defined in sections 16—1(a) through 16—1(d) of the Criminal Code of 1963 (Ill. Rev. Stat. 1979, ch. 38, pars. 16—1(a) through 16—1(d)), and apply to theft of a firearm as well as other types of theft. To that extent, both offenses share common elements. However, these offenses are treated differently in the sentencing portion of that statute (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(e)), which section provided as follows:

"(1) Theft of property, other than a firearm, not from the person and not exceeding $150 in value is a Class A misdemeanor. A second or subsequent offense after a conviction of any type of theft, including retail theft, other than theft of a

firearm, is a Class 4 felony.

(2) Theft of a firearm not from the person regardless of value is a Class 4 felony. A second or subsequent such offense is a Class 3 felony.

(3) Theft of property from the person or exceeding $150 is a Class 3 felony."

Section 16—1 of the Criminal Code of 1961 specifically treats theft of a firearm differently from theft of other property. The value of the firearm need not be shown, in contrast to a prosecution for felony theft. Also, the sentence for theft of a firearm is different, at least for the first offense, than the sentence imposed for felony theft. This statute differs from section 402 of the Controlled Substances Act because possession of the various substances in the amounts listed in sections 402(a)(1) through (11) is treated the same for the purposes of sentencing, and the State must prove, in a prosecution under any subsection, the identity of the substance and the amount. Thus, we believe that this case is distinguishable from *Manning*. It is also not similar to *Jackson*, in which the sentences imposed for the acts alleged to constitute different offenses would have been based on the same subsection of section 16—1(e), and in which the elements of proof would have been the same for both offenses.

The disparate sentencing treatment and proof requirements for the offenses of theft of a firearm and theft of property valued in excess of $150 are an indication that the General Assembly intended to allow convictions to stand for both offenses, where, as here, it is shown that a defendant exerted unauthorized control over a firearm and over other property valued in excess of $150. We conclude that the trial court did not err in entering judgment and sentencing defendant Walton for both offenses.

Accordingly, the judgment of the circuit court of Crawford County is affirmed in regard to the convictions of both defendants.

Affirmed.

JONES and KASSERMAN, JJ., concur.