THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES M. WOOLERY, Defendant-Appellant.

Fourth District   No. 4—89—0237

Opinion filed February 1, 1990.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and William H. Hall IV, all of the State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Charles M. Woolery (defendant) was convicted of unlawful possession of more than 30 grams, but less than 500 grams of cannabis, in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1987, ch. 56½, par. 704(d)) in the circuit court of Macon County, after a bench trial and based on stipulated evidence. He was sentenced to a two-year term of probation, conditioned on a 90-day term in the county jail and a fine of $180. Defendant appeals from the conviction, contending his motion to suppress should have been granted because he did not consent to the search of the trunk of his automobile.

At approximately 3:35 a.m. on October 6, 1988, defendant was stopped by a State police officer on Interstate 72 for driving 72 miles per hour. The officer noticed an odor of alcohol, and defendant admitted drinking. There was no other evidence indicating defendant's intoxication. According to the officer, the defendant was asked if there was alcohol or drugs in his auto and, after he replied "No," the officer asked if he could search the vehicle. Defendant allegedly said, "Yeah, go ahead."

The officer searched the passenger compartment of the auto, finding no alcohol or drugs but finding some plastic baggies in a shaving

kit which "gave me the impression that there might be cannabis activities in or around the vehicle." He then took the keys from the ignition and began searching the trunk of the auto. According to the officer, he opened the trunk, picked up a jacket and did a quick visual search, at which time the defendant exited the squad car and walked up to him. The defendant had remained in the squad car during the search of the passenger compartment of the automobile. At this time, according to the officer, he was holding the jacket and defendant asked him why he was searching the trunk. The officer testified:

"I explained that I had asked to search the vehicle and I was doing so. I also at this time explained to him he did have the right to refuse any further search of the vehicle.

Q. Did he tell you at that point and time not to continue to the search of the trunk?

A. No, he did not.

Q. Did he ever tell you not to search the trunk?

A. No.

Q. While you were explaining to him that he had the right to not, or to revoke his consent to the search of the trunk, or had the right to tell you to stop searching the trunk, what, if anything did you observe?

A. I observed a plastic bag, clear plastic bag sticking out of one of the pockets of the jacket, containing a green leafy substance, known to me as Cannabis."

The defendant testified the officer said he wanted to search the automobile for liquor. He also testified:

"A. He asked me could he search my car and I said 'For what?' He said 'For liquor'. I said—he asked me was there any liquor in the car and I said 'No liquor in the car.' He said 'Can I search your car?' I said 'Particularly,' I said 'You mean inside there where my people are sitting?' and he told me 'Yes'."

Defendant further testified that, upon seeing the officer enter the trunk, he approached the officer, asked him why he was searching the trunk, and "told him I gave consent for him to search inside my vehicle, not my trunk." He denied giving permission to search the trunk and said after he had asked the officer what he was doing, the officer "felt inside my jacket and he felt the bag and then he unsnapped my bag—my snap on my pocket and pulled the bag out." Defendant testified he did not think the officer was asking to search the trunk when he originally asked for consent to search the automobile. He did not tell the officer specifically that he did not want him to search the trunk.

■■ ■ It is a well-settled proposition that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514; also see *People v. Sanders* (1976), 44 Ill. App. 3d 510, 514, 358 N.E.2d 375, 378.

> "The rule for determining the voluntariness of a consent to a search is set forth in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059:
>
>> '*** [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.'
>
> The trial court's determination of the voluntariness of a consent is to be accepted on review unless its findings are clearly unreasonable. *People v. DeMorrow* (1974), 59 Ill. 2d 352, 358, 320 N.E.2d 1, 5." *People v. Sommer* (1977), 45 Ill. App. 3d 459, 460-61, 359 N.E.2d 1190, 1191.

■■ ■ There is a direct conflict in the testimony. The defendant testified that he made it clear that the consent was for the passenger compartment. The officer testified that there was no limitation given, that the consent was to search the automobile. The defendant's actions in leaving the squad car and approaching the officer when the trunk was opened appears to be an indication of defendant's lack of intent to consent to the search of the trunk. However, the trial court specifically questioned the defendant's credibility. It appears the fact finder believed the officer's testimony. The officer's testimony, as set forth above, indicated that he advised the defendant of his opportunity to withdraw the consent to search the trunk. According to the officer, the defendant did not react after this warning. Based on this evidence, the trial court could conclude that the initial consent could properly be interpreted by the officer as a consent to search the entire vehicle. We hold that a consent to search an automobile can reasonably be interpreted by the searching officer as authority to search the entire vehicle, including the trunk area. The trial court's determi-

nation that consent to search the entire vehicle was voluntarily given was not clearly unreasonable.

Because of our holding above, it is not necessary to address the State's contention that upon finding the empty plastic bags in the passenger area probable cause existed to search the trunk area. If there is probable cause for searching an automobile which has been stopped for a traffic violation, a search warrant is not necessary, but some evidence of illicit activity does not always establish probable cause. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.