THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD JOHN (E.J.) SPRIEGEL, Defendant-Appellant.

Third District   No. 3—91—0858

Opinion filed September 4, 1992.

Flack, McRaven & Stephens, of Macomb (James Patrick Murphy, of counsel), for appellant.

William Poncin, State's Attorney, of Macomb (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

The police found a brick of cannabis in the trunk of defendant's car after he consented to a search. He was convicted of unlawful possession and now appeals the denial of his motion to suppress. We affirm.

On February 11, 1989, the Macomb police department received an anonymous tip on the Crime Stoppers line. The caller said that on February 12, E.J. Spriegel would be driving from Wheeling, Illinois, to Macomb in a silver or bluish Toyota, license plate number ANJ 342. The caller also described Spriegel's physical appearance. According to the tip, the vehicle would contain marijuana and cocaine, with the cocaine being concealed in a "Fix-a-Flat can."

Acting on this information, Sergeant Robert Fitzgerald checked the license plate and learned that it was registered to Patricia Spriegel of Wheeling, Illinois. His check of the defendant's driver's license revealed that it listed a Macomb address. Sergeant Fitzgerald disseminated this information to other police departments along possible routes from Wheeling to Macomb.

On February 12, 1989, State Police Trooper Michael Inman learned that the Toyota had been observed near Roseville at about 10 p.m. Inman eventually spotted the car and began to follow it into Macomb. According to Inman, defendant failed to signal when he turned into his driveway. However, Inman also testified that it was always his intention to stop the vehicle and he had been waiting for a traffic violation to occur so that he could. Another State Police officer and a university police officer both responded to Inman's call for backup.

When Spriegel got out of the car, he did not have his driver's license with him. Inman then agreed to allow defendant to go unaccompanied into the house to retrieve the license and also to take his dog inside. Prior to going into the house, the defendant and the dog

were thoroughly frisked. The defendant's two companions were also frisked and remained outside.

After Spriegel returned from the house, Inman asked if he could search the car. The trooper did not at that time read Spriegel his *Miranda* rights, nor did he inform defendant of his right to refuse to consent.

The search of the interior of the car revealed nothing. The police then asked if they could search the trunk. Defendant consented and opened the trunk with a key. The police opened and searched various items of luggage which were in the trunk. Defendant assisted in removing these bags and unpacking the trunk of the vehicle. At one point, the defendant even offered to open a bag of dog food.

Eventually, the police found a brown paper bag in the spare tire area of the trunk. Inside this bag was a white plastic bag which in turn contained a brick of cannabis.

Inman testified that he then read defendant his *Miranda* rights whereupon defendant acknowledged that the cannabis was his. Defendant contends that he was not read his rights until after he had admitted ownership of the drugs. He makes no claim, however, that his confession was involuntary or that it was improperly obtained.

At the police station, in response to questioning, defendant stated that he had given his consent due to intimidation. When asked what he meant by intimidation, defendant responded "Well, you're a police officer." Defendant denied that Trooper Inman had used any force or threatened him in order to get him consent to the search.

Defendant brought a motion to suppress, alleging that the stop and subsequent search amounted to an illegal search and seizure. The trial court denied this motion, finding that the stop was proper under *Alabama v. White* (1990), 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412, and that defendant voluntarily consented to the search.

Defendant was convicted of unlawful possession of cannabis. He was fined $10,000 and sentenced to 24 months' probation. He now appeals the trial court's denial of his motion to suppress.

The sole issue on appeal is whether the trial court erred in denying the motion to suppress.

In *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412, the Supreme Court addressed the issue of whether an anonymous telephone tip, as corroborated by independent police

work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. The Court held that the tip standing alone was insufficient. By the time the officers made the stop, however, it had been sufficiently corroborated to furnish reasonable suspicion. The only way the officers corroborated the tip was to follow the suspect and observe that her actions correlated with those predicted by the informant.

Here, the officers had done some independent corroboration. In addition to actually observing defendant, the police had run a computer check on the license plate and on defendant's driver's license. The information obtained through those checks correlated with the informant's information. Upon these facts, the information available to the police at the time of the stop provided a reasonable suspicion to make an investigatory stop. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

Defendant concedes that the initial stop was a valid *Terry* stop. He contends, however, that his consent to the search was not the product of his own free will, but instead was merely an acquiescence to authority brought about by the intimidating actions of the officers.

It is well established that a party may consent to a search conducted without a warrant and thus eliminate the need for probable cause and a search warrant. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) *Miranda* warnings need not be given in order to obtain valid consent. (*People v. Smith* (1984), 124 Ill. App. 3d 914, 464 N.E.2d 1206.) Moreover, ignorance of knowledge of the right to refuse to consent does not vitiate the voluntariness of the consent but is merely a factor to consider. (*Smith*, 124 Ill. App. 3d at 920, 464 N.E.2d at 1211.) The State bears the burden of proving by a preponderance of the evidence that the consent was freely and voluntarily given. (*People v. Sesmas* (1992), 227 Ill. App. 3d 1040, 591 N.E.2d 918.) The trial court's determination of the voluntariness of consent will not be overturned unless it is manifestly erroneous. *People v. Harris* (1990), 199 Ill. App. 3d 1008, 557 N.E.2d 1277.

The trial court found:

> "The evidence supports the conclusion that the defendant unequivocally consented to the search of the trunk and that he was not coerced into the act. Defendant cooperated with the police and helped them unpack his trunk. Defendant was allowed to go into his house unaccompanied by an officer. He was allowed to care for his animal. Defendant was asked for

permission to search both the interior and trunk compartments. \*\*\* In response to the officer's request to search defendant replied 'Well, why? Yeah, I guess so.' His response was unequivocal and unconditional. I find it was voluntary.''

Spriegel argues that he was intimidated into consenting. He cites the presence of several armed, uniformed officers and the fact that both he and his companions were subjected to a pat-down search.

These same factors are present at many such lawful stops and do not, by themselves, give rise to such intimidation as to override a suspect's free will and make him incapable of giving valid consent to search. The validity of the consent must be determined from the totality of the circumstances. (*People v. Casazza* (1991), 144 Ill. 2d 414, 581 N.E.2d 651.) Furthermore, the scope of a consensual search is objective reasonableness—what would the typical reasonable person understand by the exchange between the officer and the suspect? (*Florida v. Jimeno* (1991), 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801.) Unqualified consent to search a vehicle can include consent to search closed containers within the vehicle (*Jimeno*, 500 U.S. at 251-52, 114 L. Ed. 2d at 303, 111 S. Ct at 1804), as well as the vehicle's trunk. *People v. Woolery* (1990), 193 Ill. App. 3d 892, 550 N.E.2d 616.

Spriegel agreed to allow the search of the vehicle. He then consented again to the search of the trunk. Spriegel alleges that he was told, not asked, to open the trunk, thus making it an involuntary search. The trial court, after hearing the evidence and observing the demeanor of the witnesses, determined that Spriegel had in fact been asked and consented. That decision is not against the manifest weight of the evidence.

Accordingly, we affirm the judgment of the McDonough County circuit court.

Affirmed.

BARRY, P.J., and HAASE, J., concur.