THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DARRYL PHILLIPS, Defendant-Appellee.

Fifth District    No. 5—93—0178

Opinion filed June 28, 1994.—Rehearing denied August 2, 1994.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Marqua McGull-Billingsley, of East St. Louis, for appellee.

JUSTICE RARICK delivered the opinion of the court:

On September 11, 1992, the defendant, Darryl Phillips, was charged with unlawful possession of cannabis with the intent to deliver in violation of section 5(c) of the Cannabis Control Act (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 705(c)). Defendant filed a motion to suppress evidence, and a hearing on the motion to suppress was held on February 11, 1993. On February 17, 1993, the trial court allowed the defendant's motion and suppressed a quantity of cannabis seized from the trunk (a carrier or box on the back) of a motorcycle which defendant was operating. The State's motion to reconsider was subsequently denied on March 3, 1993. The State's Attorney has certified that the suppression substantially impairs his ability to prosecute the defendant and thus takes this interlocutory appeal (Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)). We reverse.

At the suppression hearing, Delbert Marion, a detective of 15 years with the East St. Louis police department whose primary duty was drug enforcement, testified that while driving eastbound in St. Clair County on Interstate 64 on September 9, 1992, he observed a

motorcycle traveling at a high rate of speed. It went around several cars, and as it rounded a curve, it appeared that the rear wheel nearly slid out from under the rider. Officer Marion followed the motorcycle for over one-quarter mile, pacing it with the certified digital speedometer in his squad car. After determining the motorcycle was being driven at 73 miles per hour in a 55-mile-per-hour zone, he activated his red lights, pulled the motorcycle over, and told its rider, the defendant, that he was speeding. Defendant explained that he was trying to return home before it rained. In response to Officer Marion's request, defendant produced a valid Missouri driver's license and obtained the motorcycle registration from a zippered compartment located at the front part of the bike. Defendant explained to Officer Marion that he had an Illinois address and Illinois license plates but a Missouri driver's license because he had moved recently. Believing this explanation to be reasonable, Officer Marion decided to let the defendant go because it was about to begin raining.

As he was letting the defendant go, and while the defendant was standing next to the motorcycle preparing to leave, as an afterthought Officer Marion asked defendant whether he had any guns or drugs on the motorcycle. The defendant replied that he had no guns but said nothing about having drugs. He told the officer that he could search the bike if he cared to do so, and Officer Marion stated that he did want to search it. On cross-examination, Officer Marion denied asking the defendant for permission to search the motorcycle, insisting that defendant had volunteered his permission. Upon receiving the defendant's permission to search, the officer asked the defendant to open the carrier (trunk) on the motorcycle. The defendant opened it, and inside Marion saw a jacket which he picked up. Feeling the outside of the jacket, Officer Marion detected in the pocket what appeared to be something made of plastic. The officer then removed from the pocket a purple Crown Royal bag, which contained individually wrapped plastic bags of what he believed to be cannabis. Officer Marion then placed the defendant under arrest and handcuffed him.

The defendant testified at the suppression hearing that he was headed home on his motorcycle, eastward on Interstate 64, about 8 p.m. on September 9, 1992, when he noticed that a police officer was behind him. The officer followed him for about one-quarter mile and then activated his red lights and pulled him over. The officer, Delbert Marion, told the defendant that he had stopped him because he was speeding and that he saw the defendant leaning too far when rounding a curve and thought that defendant was about to fall. Al-

though the defendant had not looked at his speedometer, he believed that he was travelling at the speed limit because there were cars both in front of and behind him. On cross-examination however, he admitted that he did not know how fast he was going. Defendant told Officer Marion that he was trying to get home before it began raining. When Officer Marion asked to see defendant's motorcycle registration, defendant retrieved it from the trunk of his bike. Defendant described the motorcycle trunk as being a carrier about 13 to 14 inches wide and four feet high on the rear of the bike. Defendant's jacket was also in the trunk. Officer Marion took defendant's driver's license and his motorcycle registration and returned to the squad car. According to the defendant, the officer never returned either of these items to him. Defendant testified that he had purchased the motorcycle the day of the traffic stop and that it had Illinois license plates. Although he had a Missouri driver's license, defendant told Officer Marion that he lived in Washington Park, Illinois. Defendant testified that upon returning from his squad car Officer Marion told the defendant that he "was finna, let me go." Officer Marion then asked the defendant if he had any guns or drugs. The defendant responded that the officer could search the motorcycle if he cared to do so. On redirect examination, the defendant said that he told the officer that he could search the motorcycle after the officer had asked permission to search it. The defendant testified that after Officer Marion searched the motorcycle with defendant's consent, Officer Marion found some marijuana in the Crown Royal bag which was in the motorcycle trunk. At that point the officer placed the defendant under arrest for possession of marijuana.

In rebuttal, after Officer Marion testified, defendant testified that he did not volunteer permission for Officer Marion to search his motorcycle. He also indicated that although he consented to the search of the trunk of his motorcycle, he did not give his consent to search the jacket located in the trunk. Defendant stated he made no attempt to leave because the officer had not told him that he could leave and because the officer had not returned his driver's license and registration.

The trial judge found that the officer had legitimately stopped the defendant for speeding. He stated that both the defendant and Officer Marion were credible witnesses. However, he chose to believe the defendant's testimony that his driver's license and registration were never returned to him. The trial judge consequently concluded that defendant could reasonably have believed that he was not free to leave so that, when he consented to the search without having been given his *Miranda* warnings, his consent was not voluntary.

The court therefore granted defendant's motion to suppress. The court initially declined to file a written order but later did so on February 17, 1993. In that order the trial judge repeated his oral findings and added that he believed the defendant's testimony that the officer asked for defendant's consent to search the motorcycle, rather than Officer Marion's testimony that defendant suggested that the officer search it. The trial judge added that since the officer had no probable cause to believe that defendant had committed a crime, the officer was conducting "a fishing expedition" to find evidence of criminal activity. Finally, the trial judge stated that even if the defendant's consent had been voluntary, the officer exceeded the scope of the consent by searching the jacket he found in the motorcycle's trunk. After the State's motion to reconsider was denied, the State filed a timely notice of appeal and certificate of substantial impairment.

The State initially urges that the trial court erred in granting defendant's motion to suppress, contending that defendant validly consented to the search of his motorcycle. In entering the suppression order, the trial court concluded that the defendant's consent to a search of his motorcycle was not voluntary because: (1) Officer Marion had no probable cause to believe that the defendant had drugs when he requested permission to search, and (2) because the defendant was in a custodial situation and was not advised of his rights, including his right not to consent to a search.

It is a well-settled proposition that an individual may consent to a search conducted without a warrant and thus eliminate the need for probable cause and a search warrant. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) *Miranda*-type warnings, including the right to refuse to consent, are not required prior to obtaining a valid consent. (*Schneckloth*, 412 U.S. at 246, 36 L. Ed. 2d at 874, 93 S. Ct. at 2058; *People v. Wegman* (1981), 101 Ill. App. 3d 634, 637, 428 N.E.2d 637, 640.) To support a search undertaken pursuant to consent, the State must prove by a preponderance of the evidence that the consent was voluntarily given. (*People v. Holliday* (1983), 115 Ill. App. 3d 141, 143, 450 N.E.2d 355, 357.) The determination of whether a consent is voluntary is a question of fact to be determined from the totality of all the circumstances. (*Schneckloth*, 412 U.S. at 227, 36 L. Ed. 2d at 863, 93 S. Ct. at 2048; *Wegman*, 101 Ill. App. 3d at 637, 428 N.E.2d at 640.) The voluntariness of a consent does not depend on any single factor but, rather, depends upon all the circumstances under which the consent was given. (*People v. Smith* (1984), 124 Ill. App. 3d 914, 919-20, 464 N.E.2d 1206, 1210-11.) Accordingly, lack of knowledge of the right to refuse to consent does not vitiate the voluntariness of the consent but is merely

a factor to consider. (*People v. Spriegel* (1992), 233 Ill. App. 3d 490, 493, 599 N.E.2d 191, 193-94.) Since the voluntariness of a consent to search is a factual question, the trial court's determination in this regard will be upheld on review unless it is found to be manifestly erroneous. *Spriegel*, 233 Ill. App. 3d at 493, 599 N.E.2d at 194; *Smith*, 124 Ill. App. 3d at 920, 464 N.E.2d at 1211.

■ Our review of the record leads us to conclude that defendant's consent was voluntary and that the trial court's finding that the defendant could reasonably have believed that he was not free to leave was against the manifest weight of the evidence. At the outset we note that defendant's speeding violation provided Officer Marion with a reasonable basis to stop the defendant. (*People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 1010-11, 542 N.E.2d 1148, 1151; *People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 501, 551 N.E.2d 767, 769.) In addition, Officer Marion's request of the defendant to produce identification was not unreasonable and did not constitute a fourth amendment seizure. (*Manikowski*, 186 Ill. App. 3d at 1011, 542 N.E.2d at 1151.) The record reveals that Officer Marion found defendant's driver's license and motorcycle registration to be in order and had decided to let defendant leave because it appeared to him that it was going to rain soon. In fact he told the defendant that he was finished with him and that he was letting him go. The defendant then prepared to leave and was standing next to his motorcycle, when, as an afterthought, Officer Marion asked whether he had any guns or drugs in his possession. Defendant's reply was evasive, stating he had no guns but saying nothing about having drugs. Officer Marion testified that defendant told him he could search the bike if he cared to do so. Defendant testified that he told the officer that he could search the motorcycle after the officer had asked permission to search it. In its finding, the circuit court chose to believe defendant's version; however, by his own testimony, defendant agreed that he consented to the search, regardless of who first suggested it.

Officer Marion testified that he returned defendant's driver's license and his motorcycle registration. While defendant denied this, he did testify that after the officer ran a check of his license the officer told the defendant that he was finished with him and was letting him go. Officer Marion also testified that after he ran the license check he told the defendant he was free to leave. The circuit court finding that the defendant was in a custodial situation and that he could reasonably have believed that he was not free to leave appears to us to be against the manifest weight of the evidence. Officer Marion did not draw his weapon or handcuff the defendant, nor did he physically touch the defendant or use language or a tone

of voice suggesting that compliance with his request might be compelled. (*People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 1011, 542 N.E.2d 1148, 1151; *United States v. Mendenhall* (1980), 446 U.S. 544, 555-56, 64 L. Ed. 2d 497, 509-10, 100 S. Ct. 1870, 1877.) Additionally, there was not the threatening presence of several police officers or the presence of a canine unit.

Relying on *People v. Kelly* (1979), 76 Ill. App. 3d 80, 394 N.E.2d 739, defendant argues that his "consent" was involuntary because it was a passive submission to authority and not a voluntary relinquishment of his fourth amendment rights. In *Kelly*, this court held that "consent is ineffective to justify a search when a search or entry made pursuant to consent immediately following an illegal search, involving an improper assertion of authority, is inextricably bound up with illegal conduct and cannot be segregated therefrom." (*Kelly*, 76 Ill. App. 3d at 86, 394 N.E.2d at 744.) Continuing, we said: "Stated another way, mere acquiescence to apparent authority is not necessarily consent." (*Kelly*, 76 Ill. App. 3d at 87, 394 N.E.2d at 744.) In *Kelly*, one of the police officers who stopped the defendant for driving with defective brake lights observed a portion of a tire tool protruding from under the driver's seat while shining a flashlight into the car. The officer told defendant that the tire tool should not be in the passenger compartment, and to put it in the trunk. In complying with this request, an iron pipe and a kitchen knife were exposed when defendant removed the tire tool from under the seat. When the officer saw the kitchen knife, he searched the car and then asked defendant if there was anything else of that nature under the seat. The defendant then consented to a second search, which uncovered a bag of cannabis in the glove compartment. On review we found that the officer had engaged in impermissible conduct when he "asked" defendant to put the tire tool in the trunk, because possession of a tire tool in a motor vehicle is not illegal. (*Kelly*, 76 Ill. App. 3d at 86, 394 N.E.2d at 744.) Since there was no justification for asking the defendant to put the tire tool in the trunk, we found that everything from that point onward was an impermissible search and seizure, stating:

"It matters not that at the officer's 'request' defendant conducted the preliminary search by dragging various items from under the seat, or that the defendant 'consented' to the search which led to the officer's discovery of the cannabis, because the 'request' and everything occurring after it was made was an unreasonable search which violated defendant's constitutional rights under both the United States and Illinois Constitutions. We conclude that defendant's consent and prior illegal search conducted at the officer's command are inextricably joined; that the consent, being

itself the fruit of an illegal assertion of authority, cannot justify a further illegal search. From the totality of the circumstances, the inescapable conclusion is that defendant's 'consent' was a passive submission to authority and not a voluntary relinquishment of a right. The facts do not justify the conclusion that defendant consented except as the consent was secured by the officer's demand and the authority of his office. The foregoing does not amount to a waiver of defendant's constitutional rights." (*Kelly*, 76 Ill. App. 3d at 87, 394 N.E.2d at 744-45.)

*Kelly* has been interpreted by the court in *People v. Taggart* (1992), 233 Ill. App. 3d 530, 599 N.E.2d 501, as standing for the proposition that "a consent obtained pursuant to an unauthorized assertion of police power in such a fashion as to convey to a defendant an apparent authority to so act renders a consent involuntary." (*Jaggart*, 233 Ill. App. 3d at 553, 599 N.E.2d at 517.) In our case, however, there was no such unauthorized assertion of police power in such a fashion as to convey to the defendant an apparent authority to act. Rather, after advising defendant that he was letting him go, Officer Marion asked the defendant whether he had any guns or drugs in his possession and, after receiving an evasive response, asked permission to search the defendant's motorcycle. We do not find defendant's consent to be a passive submission to authority but rather a voluntary relinquishment of his fourth amendment rights.

Two recent cases with facts suggesting much more "inducement" than the instant case, where the court rejected both defendants' "passive submission to authority" argument, are *People v. Spriegel* (1992), 233 Ill. App. 3d 490, 599 N.E.2d 191, and *People v. Taggart* (1992), 233 Ill. App. 3d 530, 599 N.E.2d 501. In *Spriegel*, the defendant argued that he was intimidated into consenting after a traffic stop, citing the presence of several armed, uniformed officers and the fact that both he and his companion were subjected to a pat-down search. The court found that "[t]hese same factors are present at many such lawful stops and do not, by themselves, give rise to such intimidation so as to override a suspect's free will and make him incapable of giving valid consent to search." (*Spriegel*, 233 Ill. App. 3d at 494, 599 N.E.2d at 194.) In *Taggart* the court held that the defendant voluntarily consented to a search of his van, even though he had been transported to the police station in a locked squad car, was not advised of his right to refuse to go to the station, and was shown photographs of naked boys illegally seized from his van before he signed the written consent. The court noted that defendant was not handcuffed and was merely asked if he would mind coming to the station. (*Spriegel*, 233 Ill. App. 3d at 552-53, 599 N.E.2d at 517.)

Rejecting defendant's passive-submission argument and finding that defendant's consent was not inextricably bound up with the illegal search of his vehicle (as was the case in *Kelly*), the court stated:

"[The detective's] mere display of the photograph, albeit seized illegally from defendant's van, without more, did not convey an apparent authority such that defendant would have believed his consent to be a passive submission to that authority rather than a voluntary relinquishment of a right. There is nothing in the record to indicate that the defendant would have felt obliged to consent to a search of his van merely because [the detective] showed him the two photographs previously taken from the van." *Spriegel*, 233 Ill. App. 3d at 553-54, 599 N.E.2d at 517-18.

In our case we do not even have the issue of defendant's consent being "inextricably bound up with illegal conduct" (*Kelly*, 76 Ill. App. 3d at 86, 394 N.E.2d at 744). Even accepting defendant's version of the events, we find nothing in the record to indicate that defendant would have felt obliged to consent to a search of his motorcycle merely because Officer Marion had not yet returned defendant's license and motorcycle registration at the time he requested permission to search. The totality of the circumstances leads us to the conclusion that defendant's consent was voluntarily given. Officer Marion had told the defendant before asking for permission to search that he was letting him go. Defendant therefore knew that the traffic stop had been completed, that he was no longer being detained, and that he was free to leave. In addition, the fact that Officer Marion did not inform defendant of his right to refuse to consent does not indicate that the consent was involuntary; rather, it is simply one fact of minor consequence to be considered in the totality of the circumstances surrounding the giving of the consent. (*Schneckloth*, 412 U.S. at 232-33, 36 L. Ed. 2d at 866, 93 S. Ct. at 2050; *People v. Smith* (1984), 124 Ill. App. 3d 914, 921, 464 N.E.2d 1206, 1212.) As the Supreme Court noted in *Schneckloth*: the necessity of advising a suspect of his right to refuse to consent in order to establish voluntary consent "has been almost universally repudiated by both federal and state courts, and, we think, rightfully so." (*Schneckloth*, 412 U.S. at 231, 36 L. Ed. 2d at 865, 93 S. Ct. at 2049-50.) Not wanting to tie the hand of law enforcement agencies, the Court noted that consent searches are part of the standard investigatory techniques employed by the police, and the Court acknowledged that they normally occur on the highway under informal and unstructured conditions. *Schneckloth*, 412 U.S. at 231-32, 36 L. Ed. 2d at 865, 93 S. Ct. at 2050.

■ Finally, we note that there is no constitutional requirement that a police officer have any probable cause in order to ask an indi-

vidual for consent to search. In fact, it is an individual's valid consent that obviates the need for probable cause or a warrant. (*People v. Spriegel* (1992), 233 Ill. App. 3d 490, 493, 599 N.E.2d 191, 193; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) Accordingly, the trial court's determination that Officer Marion had no probable cause to ask for a consent or to search and the court's statement that the officer was conducting a "fishing expedition" were irrelevant to the issue of whether the defendant voluntarily consented to the search. The circuit court's reliance upon that determination and upon that belief as factors in the totality of the circumstances surrounding the consent was improper and further demonstrates that its ruling that the consent was involuntary was erroneous.

We find that the record establishes that the defendant was not being detained and that he was not in a custodial situation at the time he consented to the search of his motorcycle. Furthermore, and as an aside, we note that even if we were to determine that defendant was in custody at the time he gave his consent to search, as defendant urges, our conclusion would nevertheless remain the same. The fact that a consenting party is in custody does not, by itself, establish that the consent was coerced. *People v. Holliday* (1983), 115 Ill. App. 3d 141, 143, 450 N.E.2d 355, 357.

We now turn to the second issue raised by the State. As an alternative to its ruling that the defendant's consent to search his motorcycle was involuntary, the trial court found that even if defendant's consent could be deemed voluntary, Officer Marion exceeded the scope of the consent when he searched defendant's jacket, which he found in the rear carrier of the motorcycle. The State contends that the consent to search the motorcycle for drugs permitted Officer Marion to search the jacket found in the motorcycle's trunk. As previously noted, Officer Marion searched defendant's motorcycle pursuant to defendant's voluntary consent. When Officer Marion began inspecting the jacket he found in the motorcycle's trunk, the defendant did not tell him to stop searching, nor did he withdraw his consent. After discovering cannabis in one of the pockets of the jacket, Officer Marion arrested the defendant.

When a driver consents to a search of a vehicle for drugs, the right to search extends to containers found in the vehicle. (*Florida v. Jimeno* (1991), 500 U.S. 248, 114 L. Ed. 2d 297, 111 S. Ct. 1801; *People v. Kelk* (1992), 231 Ill. App. 3d 797, 596 N.E.2d 1267.) In *Jimeno*, the United States Supreme Court began its opinion by stating:

"In this case we decide whether a criminal suspect's Fourth Amendment right to be free from unreasonable searches is

violated when, after he gives a police officer permission to search his automobile, the officer opens a closed container found within the car that might reasonably hold the object of the search. We find that it is not. The Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." (*Jimeno*, 500 U.S. at 249, 114 L. Ed. 2d at 301, 111 S. Ct. at 1803.)

In *Jimeno*, the defendant consented to a search of his car following a traffic stop and after the officer told him that he suspected that the defendant had drugs in the car. The officer found cocaine in a brown paper bag on the floorboard of the passenger's side of the car. Discussing the standard for measuring the scope of a suspect's consent, the United States Supreme Court further stated:

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citation.] The question before us, then, is whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car. We think that it is.

The scope of a search is generally defined by its expressed object. [Citation.] *** We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. 'Contraband goods rarely are strewn across the trunk or floor of a car.' " *Jimeno*, 500 U.S. at 251, 114 L. Ed. 2d at 302-03, 111 S. Ct. at 1803-04, quoting *United States v. Ross* (1982), 456 U.S. 798, 820, 72 L. Ed. 2d 572, 591, 102 S. Ct. 2157, 2170.

In *People v. Kelk* (1992), 231 Ill. App. 3d 797, 596 N.E.2d 1267, a case heard on remand from the United States Supreme Court, the court held that the driver's statement that he did not care if the officer looked in his car was a general consent to a search of the car, including a duffel bag in the passenger compartment. The defendant in *Kelk* was stopped by the State police for a loud muffler and wrong lane usage. The officer asked the defendant if there were any drugs or weapons in the vehicle. After defendant stated there were none, the officer asked defendant if he cared if he (the officer) looked in the car. When defendant responded no, the officer proceeded to search the car and the duffel bag located therein, in which he found cannabis. Upon reconsideration of the case in line with the Supreme

Court's opinion in *Jimeno,* the court reversed its earlier opinion and found that the circuit court erred in granting defendant's motion to suppress.

█ In the instant case, the terms of the search were simple. Based on the officer's specific question about guns and drugs, the defendant was certainly aware that the object of the search would be guns and drugs. Since it can be expected that a reasonable person knows that illegal drugs are usually carried in some kind of container or package hidden from view, it was objectively reasonable for Officer Marion to believe that defendant's consent included consent to search any items found in the motorcycle carrier. The defendant placed no explicit limitations on the scope of the search, either when he gave his general consent or at the time the officer examined the jacket. In addition, when Officer Marion felt an object in the jacket's pocket, it was objectively reasonable for him to examine it in order to determine whether it contained drugs. It was not necessary for the officer to ask the defendant for consent to search each individual item he uncovered during the search. (*Jimeno,* 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804.) Accordingly, we find that the circuit court erred when it ruled alternatively that Officer Marion exceeded the scope of defendant's consent by searching the jacket he found in the motorcycle's trunk.

For the aforementioned reasons, we reverse the order of the circuit court of St. Clair County granting defendant's motion to suppress and remand for further proceedings.

Reversed and remanded.

GOLDENHERSH and MAAG, JJ., concur.