THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES K. BAILEY, Defendant-Appellee.

Third District   No. 3—99—0773

Opinion filed July 7, 2000.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE HOMER delivered the opinion of the court:

The defendant, Charles K. Bailey, was charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1998)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5 (West 1998)). He later moved to suppress the evidence against him. The court conducted a suppression hearing and granted his motion. The State appeals, and we affirm.

## BACKGROUND

At the suppression hearing, police officer Tab Jensen testified that he and three other officers went to an apartment to execute an arrest warrant on Tomel Keese. The warrant had been issued because Keese failed to appear on a drug charge. The officers wore plain clothes and drove an unmarked squad car. Upon arriving, they saw Keese and the defendant attempting to enter the apartment. One of the officers yelled "stop," but Keese and the defendant proceeded hurriedly through the apartment door. The officers ran to the door and entered behind them before they could close it.

The first room inside the door was the kitchen. Two of the officers caught Keese between the living room and the kitchen and began apprehending her there. Meanwhile, Jensen and Officer Ambrosini stopped the defendant in the kitchen to keep him from interfering with Keese's arrest. They did so by standing in front of him and blocking his path. Jensen asked the defendant his name, and the defendant identified himself. Jensen testified he then asked the defendant "if he had anything illegal on his person." The defendant said he had a pipe and began reaching for his right shirt pocket. Jensen did not know if he was reaching for a weapon and consequently stopped him by grabbing his arm. Ambrosini then reached into the pocket and pulled out a crack pipe.

The defendant was subsequently arrested and searched. The search revealed two off-white rocklike substances (which tested positive for cocaine) in his left shirt pocket. Jensen testified that the encounter with the defendant occurred before the other officers finished arresting Keese. He explained that he asked the defendant about illegal items for officer-safety purposes and that the defendant was not free to leave at that time.

Officer Ambrosini offered testimony substantially similar to Jensen's testimony. However, as far as she knew, the other officers had Keese under control when she and Jensen spoke with the defendant. The only reason they asked him about illegal items was because he ran into the house with Keese.

The defendant testified that he heard someone yell "stop" when he and Keese were entering the apartment. They entered anyway and closed the door behind them. He sat down at the kitchen table and was pouring some wine when he heard a knock at the door. He had been in the apartment for one to two minutes when the knock occurred.

Keese's mother opened the door. Four police officers ran inside, and Keese was apprehended. While Keese was being taken from the apartment in handcuffs, a male and a female officer stood in front of the defendant in the kitchen. The male officer said to him, "What do you have illegal in your pockets?" The female officer simultaneously reached for his shirt pocket, and he reached up to stop her. The male officer grabbed his hand, and the female officer took a crack pipe from his pocket. He was arrested, and the police searched him and also found cocaine in his pocket.

At the conclusion of the hearing, the judge found that the officers had a right to enter the apartment and separate the defendant from Keese to prevent him from interfering with the arrest. However, she also found that the officers had no reason to further detain the defendant and question him about his own conduct. She consequently suppressed the drugs and drug paraphernalia seized from him.

## STANDARD OF REVIEW

The judge's ruling is entitled to deference because more than one inference may be drawn from the facts presented at the suppression hearing. See *People v. Sweborg*, 293 Ill. App. 3d 298, 688 N.E.2d 144 (1997). Accordingly, we will not overturn the ruling unless it is manifestly erroneous (*i.e.;* "arbitrary, unreasonable, and not based on the evidence"). *People v. Nadermann*, 309 Ill. App. 3d 1016, 1020, 723 N.E.2d 857, 861 (2000).

## ANALYSIS

First, the State claims that the judge erred in granting the defendant's motion to suppress because he was never detained by the police. "If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." *Florida v. Royer*, 460 U.S. 491, 498, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983) (plurality opinion). Such a detention or seizure has occurred if a reasonable person in the defendant's position

would not have believed he was free to leave. *People v. Brownlee*, 186 Ill. 2d 501, 713 N.E.2d 556 (1999).

The State argues that a detention did not occur because, according to the defendant's testimony, the police "were leaving the home when they merely asked [him] whether he had any illegal contraband on his person." Actually, the defendant testified that two officers stood in front of him, asked if he possessed any illegal items, and took a pipe from his shirt pocket while Keese was being taken from the apartment. The testimony from Jensen and Ambrosini sheds additional light on the nature of the encounter. They intentionally impeded the defendant's movement almost immediately after entering the apartment, and they were still doing so when Jensen began questioning him. They acknowledged that he was not free to leave at that time. We are convinced that a reasonable person in the defendant's position would not have felt free to leave. We thus cannot say that the judge committed manifest error in concluding that a detention occurred.

Next, the State suggests that Jensen and Ambrosini's conduct was a permissible exercise of their "community caretaking" function. Police officers operate under this function when their conduct is " 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *People v. Murray*, 137 Ill. 2d 382, 388, 560 N.E.2d 309, 312 (1990), quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528 (1973). Since Jensen and Ambrosini admitted that they were investigating whether the defendant possessed illegal items, the State's community caretaking argument must fail.

Next, the State claims that, even if the defendant was briefly detained, the detention was permissible because "police officers executing an arrest warrant in a home must be able to detain occupants of the home to prevent them from interfering with the arrest." In asserting this claim, the State fails to acknowledge that Jensen and Ambrosini did more than just detain the defendant to keep him from interfering with Keese's arrest. The cases the State cites do not support the type of conduct at issue in the instant case. For example, *People v. Kilfoy*, 122 Ill. App. 3d 276, 466 N.E.2d 250 (1984), involved police officers executing a search warrant for a house in which illegal drugs were located. An occupant answered the door, and she responded affirmatively when the officers asked if she resided there. The reviewing court concluded that the question was permissible even though the woman was detained while the warrant was executed. However, unlike the instant case, the officers in *Kilfoy* did not conduct further pre-arrest questioning aimed at ascertaining whether the woman was guilty of any criminal activity.

After raising the foregoing arguments, the State addresses the issue at the heart of the judge's suppression ruling: Were Jensen and Ambrosini allowed to question the defendant about his own criminality, and then search his pocket for illegal items, when their justification for detaining him was to prevent interference with Keese's arrest?

It is well established that the fourth amendment applies to all seizures of a person. *Brownlee*, 186 Ill. 2d 501, 713 N.E.2d 556. Thus, seizures and ensuing searches must be reasonable even in situations involving brief detentions short of a traditional arrest. *People v. Holveck*, 141 Ill. 2d 84, 565 N.E.2d 919 (1990). In *Terry v. Ohio*, the United States Supreme Court explained that the reasonableness of such a detention is determined by ascertaining (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879 (1968); see *Royer*, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325 (noting that the scope of a detention must be "carefully tailored to its underlying justification"). The *Terry* standard applies to a detention occurring within a residence after police officers have legitimately entered the residence. See *People v. Barber*, 181 Ill. App. 3d 749, 537 N.E.2d 1171 (1989); see also *People v. Spann*, 237 Ill. App. 3d 705, 604 N.E.2d 1138 (1992) (applying *Terry* principles where the defendant was detained and frisked inside an apartment during execution of a search warrant on the apartment).

In the instant case, the justification given by Jensen and Ambrosini for detaining the defendant was to prevent him from interfering with Keese's arrest. They operated within the bounds of that justification when they stood in front of him and prevented him from leaving the kitchen. The record shows that no further action was needed to accomplish their purpose. Nevertheless, the officers expanded the scope of the defendant's detention by questioning him about his own criminality and searching him for illegal items. This conduct was unrelated to Keese's arrest and did not facilitate their original goal of merely preventing interference with execution of the warrant. We thus cannot say that the judge committed manifest error in finding that the defendant's fourth amendment rights were violated.

The State analogizes the instant case to *People v. Sesmas*, 227 Ill. App. 3d 1040, 591 N.E.2d 918 (1992), and *People v. Phillips*, 264 Ill. App. 3d 213, 636 N.E.2d 1118 (1994). In those cases, police officers stopped defendants for traffic violations but also asked if they were carrying drugs or weapons. However, the questions were not asked until after the defendants understood that the purposes for the stops

were complete. Rather than leave, the defendants answered the questions and subsequently consented to searches. The reviewing courts upheld the searches, noting that the defendants had consensually stayed beyond the time needed to address their traffic violations. See *Sesmas*, 227 Ill. App. 3d at 1046, 591 N.E.2d at 922 (upholding judge's determination that "the continued detention was consensual"); *Phillips*, 264 Ill. App. 3d at 222, 636 N.E.2d at 1124 (finding "that the defendant was not being detained and that he was not in a custodial situation at the time he consented to the search").

The facts of the instant case present a different picture. The record reveals no point at which the defendant's detention became a consensual encounter before he was questioned about possessing illegal items. Jensen and Ambrosini initially detained the defendant by standing in front of him and blocking his path from the kitchen. They were still standing in front of him—close enough to grab his arm and reach into his pocket—when Jensen questioned him. Furthermore, the defendant did not consent to have anyone search his pocket before Ambrosini reached inside and found the pipe. *Sesmas* and *Phillips* are too factually dissimilar to provide authority here.

Finally, the State argues that the officers had reason to suspect that the defendant might be in possession of drugs when the question was asked. The fact that Keese entered her house quickly after seeing the police suggested that she might have something to hide. Knowing her arrest was imminent, she may have passed contraband to the defendant. However, such suspicion would not justify questioning the defendant about possession of contraband during his detention. An investigative detention without a warrant must be based on specific and articulable facts warranting the intrusion. See *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Mere hunches and unparticularized suspicions of criminality do not satisfy this standard. See *People v. Stewart*, 242 Ill. App. 3d 599, 610 N.E.2d 197 (1993). At most, the facts relied upon by the State in this instance supported a hunch that Keese may have passed contraband to the defendant.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Will County circuit court.

Affirmed.

KOEHLER and HOLDRIDGE, JJ., concur.